Samuel A. Spiegel, J.
.At a hearing on defendant’s motion to suppress, the following facts were elicited from United States Customs Officer Colin Henry.
Defendant attempted to board a plane at Cate No. 7 at Kennedy International Airport and, as he was passing through, he triggered the magnetometer. Defendant’s boarding pass was marked for search if he activated the magnetometer. An appropriate notation on the boarding pass was made by an airline employee to indicate that defendant fit a “ highjacker profile.” The profile consists of the grouping of unique objective characteristics which distinguish potential highjackers from the general air-traveling public. (See United States v. Lopes, 328 F. Supp. 1077 [1971].) Before defendant passed through the magnetometer an announcement was made over a loudspeaker that antihighjacMng procedures were in effect at the airport. Officer Henry states that he asked defendant whether he would consent to a search and he did. The officer patted down defendant, noticed a bulge in- his pocket, and asked him to remove the contents of that pocket. He did and attempted to immediately place it into another pocket. This package was recognized by the officer as containing marijuana. Some heroin and other contraband were also found on defendant. The officer testified that if defendant had refused to be searched he would have been brought to the airline authorities, who would then determine whether to permit him to board the plane without a search.
Defendant contends that this search and seizure without a warrant was unreasonable, without probable cause and, since he was not advised that he could refuse to be searched if he chose not to board the plane, it therefore was not a valid consent.
The People contend that the consent was valid and the search was justified as a precautionary measure for the safety of airplane passengers. Since the purpose is to prevent hijacking, the People contend that rigid standards should not be applied to these types of searches. The compelling need for affording airline passengers adequate protection from hijackers has made these searches imperative. As a matter of fact a task force was appointed to consider effective meaps of combating this ter *539 rifying and heinous course of conduct. It was the task force which devised the anti-hijacking system which consists of a profile selection, magnetometer detection, and the “ stop and frisk ” or limited search. For a detailed and illuminating description of the system, see United States v. Lopes (328 F. Supp. 1077, supra). (See, also, United States v. Epperson, 454 F. 2d 769 [1972]; United States v. Bell, 335 F. Supp. 797; Sibron v. New York, 392 U. S. 40.)
In Terry v. Ohio (392 U. S. 1 [1968]) and in CPL 140.50 the right to “stop and frisk ” a suspect by an investigating officer is not limited to his own protection but extends to “ others * * * in danger ’ \ In light of the wave of plane hijackings, kidnappings, extortion, and other crimes perpetrated by some ill-intentioned passengers with concealed weapons at our nation’s airports, such limited searches had to be initiatéd. In Terry v. Ohio (supra) the United States Supreme Court, in upholding a “stop and frisk” law, held, though the police must whenever practicable secure a warrant to make a search and seizure, that procedure cannot be followed where swift action based upon on-the-spot observations of the officer * ' * * is required.
People v. Rosemond (26 N Y 2d 101 [1970)), in upholding section 180-a of the Code of Criminal Procedure dealing with “ stop and frisk ” said (pp. 103, 104), “ a statute, such as this one, addressed to a particular situation and designed to give legal justification for specially prescribed procedures ought not to be read to narrow down the normal duty of police to find out by suitable inquiry what is going forward in the public streets.”
As a matter of fact a limited search for weapons at an airport may be reasonable though it may be based on less probable cause than is required even in a traditional “ stop and frisk ” situation.
In United States v. Lindsey (451 F. 2d 701, 703 [1971]) the United States Court of Appeals of the Third Circuit, speaking of an antihijacking search by a United States Marshal, said “In the context of a possible airplane highjacking with the enormous consequences which may flow therefrom, and in view of the limited time in which Marshal Brophy had to act, the level of suspicion required for a Terry investigative stop and protective search should be lowered.”
This court therefore holds that the contraband was seized ip this case as a result of a properly administered Federal anti- *540 hijacking system and was not violative of defendant’s constitutional protection against unreasonable search and seizure.
This court finds, that this search was .rightfully within the power of the airline, was based on probable cause, was not unreasonable and does not violate the Fourth Amendment. This brings us to the issue of defendant’s consent to the search.
Defendant contends it is incredible that he would have freely consented to a search though he knew he possessed contraband. Therefore, he argues that defendant’s words of consent should be construed as an involuntary submission to authority and insufficient to waive his Fourth Amendment constitutional right.
In United States v. Gorman (355 F. 2d 151, 159), the United States Court of Appeals of the Second Circuit held: “ Acceptance of this contention would mean that expressions of consent could relieve officers of the need of obtaining a warrant only when' the speaker was not aware that the search would disclose damaging evidence — a fact usually not within the officers’ knowledge. Such a ruling not only would almost destroy the principle permitting a search on consent but would enable experienced criminals to lay traps for officers who, relying on the words of consent, failed to secure a search warrant that would have been theirs for the asking.”
Furthermore, in airplane antihijacking searches particularly, possessors of narcotics may readily, voluntarily, and intelligently consent to a search since they may presume that the searcher is interested only in weapons with which' to hijack the plane.
Defense claims that since the purpose of the anti-hijacking search is solely to disclose weapons which may be used to effectuate the purpose of a potential hijacker, the seizure of narcotics is prohibited. It is a basic tenet of the law that a law enforcement officer need not close his eyes to one form of contraband merely because he is searching for another. (United States v. Bell, 305 F. Supp. 797, supra.) Further it would be ludicrous to conceive that the searcher would be required to return heroin or other drugs, counterfeit money or other contraband when he did not discover a weapon or explosives. If the search at its inception was reasonable and complied with the Fourth Amendment then a law enforcement officer can seize any contraband uncovered in the course of such a lawful search.
The court finds that defendant’s consent to be searched was freely and intelligently given. (United States v. Gorman, 355 F. 2d 151, supra.)
For all of the foregoing reasons the motion is denied.